# Illinois Official Reports

## Appellate Court

---

**Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Charter School Comm'n, 2016 IL App (1st) 151372**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF WOODLAND COMMUNITY CONSOLIDATED SCHOOL DISTRICT 50, Plaintiff-Appellee, v. THE ILLINOIS STATE CHARTER SCHOOL COMMISSION, THE ILLINOIS STATE BOARD OF EDUCATION, and THE BOARD OF DIRECTORS OF PRAIRIE CROSSING CHARTER SCHOOL, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-15-1372, 1-15-1820 cons. |
| Filed | July 28, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-8573; the Hon. Thomas Allen, Judge, presiding. |
| Judgment | Judgment vacated and case dismissed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn Shapiro, Solicitor General, and Brett E. Legner, Deputy Solicitor General, of counsel), for appellants Illinois State Charter School Commission and Illinois State Board of Education.<br><br>Denean K. Sturino and Elizabeth M. Bartolucci, both of O'Hagan LLC, of Chicago, for appellant Board of Directors of Prairie Crossing Charter School. |

James A. Petrungaro and Adam Dauksas, both of Scariano, Himes & Petrarca, Chtrd., of Chicago, for appellee.

Caroline A. Roselli and Rachel E. Lutner, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for *amici curiae* Illinois Association of School Boards, Inc., and Illinois Association of School Administrators.

Panel      JUSTICE HOWSE delivered the judgment of the court, with opinion. Justices Ellis and Cobbs concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, the Board of Education of Woodland Community Consolidated School District 50 (Woodland) filed a complaint for, *inter alia*, administrative review of the decision of defendant, the Illinois State Charter School Commission (Commission) to renew the charter of Prairie Crossing Charter School pursuant to the Charter Schools Law (105 ILCS 5/27A-1 *et seq.* (West 2012)). The complaint named as defendants the Commission and the Illinois State Board of Education (Board) (collectively, the State defendants), as well as the Board of Directors of Prairie Crossing Charter School (Prairie Crossing). The circuit court of Cook County granted plaintiff the relief sought and reversed the Commission's decision, which would result in the closing of the school. Defendants filed a motion to reconsider. Prior to ruling on the motion, the State defendants filed a notice of appeal. The trial court denied the motion to reconsider. Thereafter the State defendants filed a second notice of appeal, in which Prairie Crossing joined. We consolidated the appeals. This court allowed the Illinois Association of School Boards, Inc., and the Illinois Association of School Administrators, Inc., to file an *amicus curiae* brief.

¶ 2    Before the trial court, plaintiff challenged the Commission's findings of fact, its procedures for determining whether to renew a charter, and its decision to renew Prairie Crossing's charter. Defendants attacked plaintiff's standing to challenge the Commission's decision and on appeal argue not only did plaintiff lack standing to challenge the administrative decision to renew the charter, the trial court lacked jurisdiction to proceed under the Administrative Review Law with a review of the Commission's decision. Defendants seek reversal of the trial court's order denying their motion to dismiss. Defendants also seek reversal of the trial court's judgment reversing the Commission's decision, arguing the Commission's findings of fact are not against the manifest weight of the evidence, it did not abuse its discretion in employing the procedures it did, and its ultimate decision is not clearly erroneous.

¶ 3    We agree with defendants that under the circumstances presented here plaintiff lacked standing to challenge the Commission's decision to renew Prairie Crossing's charter. Accordingly, we have no need to reach any of the parties' other arguments. For the following

reasons, we reverse the trial court's judgment denying defendants' motion to dismiss plaintiff's complaint.

¶ 4                                    BACKGROUND

¶ 5        The process for opening a charter school requires a proposal to the board or boards of the local school districts covering the area in which the proposed charter school would operate. 105 ILCS 5/27A-7(a) (West 2012). The Charter Schools Law sets forth what is required to be in the proposal. *Id.* The proposal constitutes a proposed contract between the governing body of the proposed charter school and the authorizer. 105 ILCS 5/27A-6(d) (West 2012). "Authorizer" is a statutorily defined term under the Charter Schools Law. 105 ILCS 5/27A-3 (West 2012). A charter school's "charter" is a contract between the charter school and the authorizer. 105 ILCS 5/27A-6(a) (West 2012). The charter school must operate under the terms of the contract. *Id.* If the local school board approves the proposal, the Board determines whether the approved proposal is consistent with the Charter Schools Law and, if it is, the Board certifies the proposal. 105 ILCS 5/27A-8(f) (West 2012). If the local school board approves the proposal and the Board certifies it, the local school board becomes the authorizer of the charter school. 105 ILCS 5/27A-7.10, 27A-9(f) (West 2012). The Charter Schools Law affords an entity seeking to open a charter school whose proposal is rejected by a local school board an opportunity to appeal to the Commission. 105 ILCS 5/27A-8(g) (West 2012). If the Commission reverses the local school board's decision and the charter is later certified the Commission becomes the authorizer of the school. 105 ILCS 5/27A-9(f) (West 2012). (At the time Prairie Crossing submitted its proposal the appeal was to the Board. The Commission was created in July 2011, and the Board's functions with regard to proposals to open charter schools were transferred to the Commission, including acting as the school's authorizer. 105 ILCS 5/27A-7.5(k) (West 2012).)

¶ 6        A charter may be granted for a period of not less than 5 but no more than 10 school years. 105 ILCS 5/27A-9(a) (West 2012). A charter may be renewed for a period of no more than 5 years. *Id.* The charter school must submit a renewal application to its authorizer. 105 ILCS 5/27A-9(b) (West 2012). The Charter Schools Law specifies what must be in a renewal application. *Id.* The Charter Schools Law also specifies under what circumstances a charter may be revoked or not renewed. 105 ILCS 5/27A-9(c) (West 2012). If a local school board is the authorizer a charter school may appeal a decision to revoke or not renew a charter to the Commission. 105 ILCS 5/27A-9(e) (West 2012). The Charter Schools Law specifies what the Commission must find to reverse a local school board's decision to revoke or not renew a charter. *Id.* Authorizers are required to develop policies and practices for charter renewal decision making. 105 ILCS 5/27A-7.10(e)(5) (West 2012).

¶ 7        In this case, the area Prairie Crossing Charter School would serve covered Woodland Community Consolidated School District 50 and Fremont School District 79 (Fremont). Both Woodland and the Fremont board of directors rejected Prairie Crossing's proposal. (Fremont is not a party to this appeal.) Prairie Crossing appealed to the Board. The Board reversed and granted the school its charter. Thus the Board became the authorizer for Prairie Crossing Charter School. The Board renewed Prairie Crossing Charter School's charter in 2004 and 2009. In 2011, plaintiff petitioned the Board to revoke Prairie Crossing's charter. The Board did not revoke the school's charter. After the Commission was formed, the Board transferred its duties as authorizer of Prairie Crossing Charter School to the Commission. Shortly

thereafter the Commission adopted a policy for evaluating charter-renewal proposals that it called its Accountability System. Prairie Crossing Charter School and the Commission entered into a new charter school agreement.

¶ 8    Pursuant to its Accountability System, the Commission began "due diligence activities" before Prairie Crossing submitted its most recent renewal application. This resulted in initial renewal findings based on the application of the Accountability System to the school's performance over the past five years in three key "domains" as they are called in the Accountability System: academic, financial, and organizational. The initial renewal findings are published before the school submits is renewal application. The school submitted its renewal application in November 2013. In January 2014 Woodland's attorney, on behalf of Woodland, delivered a letter and supporting exhibits to the Commission. Woodland's attorney stated the letter "serves as a response" to the school's renewal application and asked that it be delivered to anyone who would participate in the recommendation or decision concerning the renewal application. The letter asked the Commission to deny the renewal application "for material violations of the Charter Schools Law and because the charter is not in the best interests of Woodland taxpayers" or, alternatively, for the school's funding to be reduced.

¶ 9    During the Accountability System process the Commission's staff (1) conducted a site visit that included classroom observations and interviews with stakeholders, (2) held a community forum at the school to accept public comment on the renewal proposal, (3) interviewed school administration, (4) collected additional data from the school, (5) retained an expert to analyze the school's facilities, and (6) retained an expert to analyze the school's finances and conduct an "economic soundness assessment." At the conclusion of this process the Commission's staff prepared a recommendation that the Commission renew the charter only if the school satisfied two conditions. First that the school "develop a detailed plan for robust outreach to the educationally disadvantaged" and second that the school "develop an evaluation system for management." Concerns about the demographics of the school's student population had been raised during the prior renewal process. In April 2014 the Commission met to consider the recommendation. At that meeting, the Commission heard from Commission staff, representatives of the school, and from representatives of Woodland and Fremont. The Commission voted to renew the charter by a vote of 5 to 4.

¶ 10   In May 2014 Woodland filed a four-count complaint in the circuit court of Cook County against the Commission, the Board, and Prairie Crossing. Woodland's complaint states that at no point in the Commission's review of the renewal application was Woodland contacted to participate in the renewal process and it was not offered an opportunity to be heard other than during the public comment portion of the Commission's meetings. Woodland presented comment during three of the Commission's public meetings. Count I of Woodland's complaint sought judicial review of the Commission's decision to renew the charter and the proceedings that culminated in that decision and asked the court to reverse the decision.

¶ 11   Woodland alleged that the decision by the Commission may be reviewed as provided by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)) and that the Commission is subject to the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2012)). Woodland also alleged that when the Commission granted the renewal application it thereby "denied Woodland's objection to the renewal" and that a copy of the decision "was served on Woodland via email." The complaint alleged the Commission's decision "adversely affects the legal rights of Woodland in that it will deprive Woodland of the

majority of its allotted State education funding." Woodland's complaint listed the reasons it believed the Commission's decision was erroneous and contrary to the Charter Schools Law. Those reasons included allegations that Prairie Crossing Charter School was not compliant with the Charter Schools Law or its 2009 renewal agreement in several respects and allegations that the Commission "failed to follow the procedures required for contested cases under the Administrative Procedure Act [and] lacks any regulations establishing the process for a contested charter renewal application." Woodland complained it did not receive notice of a hearing or a meaningful opportunity to be heard concerning the most recent charter renewal application.

¶ 12    Count II of the complaint alleged Woodland "has the right of judicial review of Defendant Commission's Decision" and sought a writ of *certiorari* against all defendants. Count III sought a declaratory judgment that the decision to renew the charter is erroneous and contrary to the Charter Schools Law, that any certification by the Board of a renewal of the charter is contrary to the Charter Schools Law, and that any payment of state funds otherwise allotted to Woodland to Prairie Crossing Charter School would be a violation of the Charter Schools Law and the School Code (105 ILCS 5/1-1 *et seq.* (West 2012)). Count IV of Woodland's complaint sought a writ of *mandamus* to the Commission to rescind the decision to renew the charter and enter a decision rejecting the renewal application and to the Board not to certify or to decertify the renewal agreement.

¶ 13    In June 2014 Woodland filed an emergency motion to stay the Commission's final decision. In response to the motion to stay, the State defendants argued, in part, that the trial court lacked jurisdiction to stay the matter under the Administrative Review Law because that law does not apply to these proceedings and Woodland has no standing to seek judicial review of the Commission's decision under the Administrative Review Law. The State defendants noted that Woodland is not a party to the 2009 charter renewal agreement or the charter renewal agreement that is the subject of these proceedings and that, although Woodland "submitted a written objection to Prairie Crossing's 2014 renewal application, and its written objection and comments made at the public hearings were considered by the Commission, [Woodland] was not a formal party in [the] renewal process."

¶ 14    At the hearing on the motion to stay Woodland's attorney argued the Administrative Review Law applied to the proceedings under sections 27A-8(h) and 27A-9(e) of the Charter Schools Law. 105 ILCS 5/27A-8(h), 27A-9(e) (West 2012). Counsel argued: "Both of those sections include an identical sentence that says final decisions of the Commission shall be subject to judicial rule [*sic*] under the Administrative Review Law." Woodland's counsel argued later in the hearing, regarding the applicability of the Administrative Review Law, as follows:

> "MR. PETRUNGARO [plaintiff's attorney]: Under those two sections. The legislature set it up such that if a local board's decision at the onset of a charter, if that is reversed by the Charter Commission, it goes to administrative review. Every five years that same decision has to be renewed. Once the Charter Commission grants the charter, it is up for renewal every five years.
>
> So, what they are arguing, Your Honor, is that essentially the charter should be permitted to operate in perpetuity so long as the Commission says so without any challenge from the local district that is essentially funding the charter school. They are arguing that the local district, in this case Woodland, which loses approximately $3

million a year, Your Honor, has no opportunity to be heard, has no opportunity to weigh in on the renewal, despite the fact that one of the essential renewal factors that the Charter Commission is supposed to be considering is the financial impact of the charter school on the local district."

¶ 15    When questioned about Woodland's status as a party, counsel argued as follows:

"MR. PETRUNGARO [plaintiff's attorney]: Their argument is that we are not a party to this. That is actually an interesting argument because that is our argument, is that they didn't make us a party to this. They left us out of this contested hearing. That the Commission gave Woodland no opportunity to meaningfully proceed or to participate in the renewal of that."

¶ 16    When asked about the public hearings Woodland's counsel attended, he stated: "I showed up to a public meeting." Later, counsel said: "It was no more than showing up, a parent or community member showing up to a school board meeting and making comment about something."

¶ 17    Defendants argued the provisions in the Charter Schools Law on which Woodland relied for the applicability of the Administrative Review Law only apply when the Commission reverses a local school board decision, which in this case occurred in 1999. The trial court questioned counsel for the State defendants and Prairie Crossing as to whether the legislature could have intended that a local school board would have only "one bite at the apple" to seek administrative review of decisions that affect the school district. Defendants maintained the statute does not permit administrative review of the decision to renew a charter when the Commission is the authorizer.

¶ 18    The trial court took the matter under advisement and scheduled a date for the parties to return for its ruling on the motion to stay. When the parties returned the trial court noted the parties' respective positions that the language in two sections of the Charter Schools Law subjecting the Commission's decision to the Administrative Review Law applied either only to the decision provided for under those individual sections (defendants) or, alternatively, that the language in the Charter Schools Law adopting the Administrative Review Law applied globally to all of the Commission's decisions (plaintiff). The trial court ruled as follows:

"THE COURT: I'm inclined to conclude that in a broad sense that whether you are talking about administrative review the legislature put those provisions on there. Granted, they didn't put a shotgun provision into the beginning or the end of the Act saying that the—all actions of the Commission or of the parties and the agency *** are subject to judicial review under the Administrative Review Act [*sic*]. But I prefer to err on the side of inclusiveness and access to the courts. And for those reasons *** I am not buying that the Court *** doesn't have jurisdiction over a Commission that is doing this very cutting edge and important work dealing with education in the State of Illinois."

¶ 19    The trial court held it had jurisdiction to review decisions by the Commission. The court then turned to the question of Woodland's standing. The court found Woodland had standing in this case, reasoning as follows:

"THE COURT: The school district is charged with taking the funds that the State of Illinois authorizes or however it is divided up in the formula and educating the students and the pupils that live within that school district. The funds that are going to the

charter school come from that pot of money and it's—it just seems to me incongruous to think that there is—that the plaintiff doesn't have an interest in that money whether it is being spent in accordance with the mandates of the charter school legislation ***. To say otherwise would give the charter school a lifetime charter without the school district ever being able to step back into the arena and put the hard questions to whether it's—this Commission or any other body that the legislature creates."

¶ 20    The trial court ultimately denied Woodland's motion to stay the Commission's decision to reauthorize the charter school.

¶ 21    In July 2014 the State defendants filed a motion to dismiss Woodland's complaint on the grounds (1) Woodland lacks standing to pursue the action because it was not a party of record to the administrative proceedings and cannot show that it is adversely affected by the Commission's decision and (2) the Charter Schools Law does not adopt the Administrative Review Law for review of the decision at issue here; therefore, the trial court lacks jurisdiction to hear Woodland's claim for administrative review. Prairie Crossing joined in the State defendants' motion to dismiss.

¶ 22    At the hearing on the motion to dismiss, Woodland's counsel argued the issues raised in the motion to dismiss had been addressed in the trial court's ruling on the emergency motion to stay the Commission's decision. Woodland's counsel argued, in part, as follows:

"MR. PETRUNGARO [plaintiff's attorney]: Judge, the argument that the defendants have raised about not being a party to the underlying proceedings is nothing new. It's something we alleged in our complaint.

We don't dispute that we weren't a party. Our argument is that we should have been a party. We should have been a party under the provisions of the Administrative Review Law and the legislative intent of the Charter Schools Law."

¶ 23    Woodland's counsel argued Woodland's standing based on the diversion of funds to Prairie Crossing Charter School and the provisions in the Charter Schools Law pertaining to the applicability of the Administrative Review Law. Woodland's counsel continued as follows:

"MR. PETRUNGARO [plaintiff's attorney]: So for the defendants to argue that the local school district, which in this case, which is out approximately $3 million a year to not have standing, to not have the opportunity to challenge the decision of the Commission, a decision that directly economically impacts the school district is just wrong.

The decision back in 1999 cannot live *ad infinitum*, such that the local school district doesn't have any opportunity to challenge it."

¶ 24    The trial court noted that the issues and argument before it were the same issues before it on the motion to stay. The trial court expressly incorporated its findings on the motion to stay into its ruling on the motion to dismiss. The court added the following:

"THE COURT: [T]he State statute does not operate in a vacuum, one section at a time like all statutes. You have to add the entire statute in a comprehensive way, which applies. The story line here is whether or not this is ground breaking legislation which affects millions in the State of Illinois.

Under the facts we have here it is a small group, but the real question is whether the legislature intended that there not be judicial review available for, in this case, we'll say

a school district that opposed the creation of a charter school and whether the legislature intended that judicial intervention or judicial relief for that school district was just a once in a lifetime opportunity."

¶ 25 The trial court noted the sections of the Charter Schools Law, sections 27A-8 and 27A-9, and the argument as to whether the language adopting the Administrative Review Law applies only to those provisions, but expressed concern that a local school district "could never challenge the continuing operation of a charter school." The court held it would "rely on what I ruled on in the motion to stay" and denied the motion to dismiss.

¶ 26 In November 2014 the trial court stayed counts II, III, and IV pending resolution of count I. In March 2015, following briefing and argument by the parties, the trial court reversed the Commission's decision to renew Prairie Crossing's charter. Defendants filed a motion to reconsider and a motion to stay the trial court's judgment. Following briefing and a hearing, the trial court denied defendants' motions to reconsider and to stay judgment.

¶ 27 This appeal followed.

¶ 28                                                    ANALYSIS

¶ 29 The threshold issue we must address is whether the trial court had jurisdiction to conduct proceedings under the Administrative Review Law.

> "[T]he constitution provides that final administrative decisions are appealable only 'as provided by law' (Ill. Const. 1970, art. VI, ¶ 9). Because review of a final administrative decision may be obtained only as provided by statute, a court exercises 'special statutory jurisdiction' when it reviews an administrative decision. Special statutory jurisdiction is limited to the language of the statute conferring it and the court has no powers from any other source." *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007).

¶ 30 "The lack of subject matter jurisdiction cannot be waived, and without it, the trial court has no authority to consider or act on a case before it other than to dismiss it." (Internal quotation marks omitted.) *Hawthorne Race Course, Inc. v. Illinois Racing Board*, 2013 IL App (1st) 111780, ¶ 21. "The [Administrative] Review Law was intended to replace writs for *mandamus*, *certiorari*, and other equitable, statutory, and common law actions as methods of review and provide uniformity in reviewing administrative decisions. [Citation.] However, the [Administrative] Review Law does not apply unless it has been expressly adopted. [Citation.]" *Porter v. Illinois State Board of Education*, 2014 IL App (1st) 122891, ¶ 23. Thus, "[w]hether an agency action is reviewable is an issue of statutory construction." *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 332 (2009). This court construes a statute *de novo*. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). It is a well-settled rule of statutory construction that a statute should be construed, "wherever possible, such that no word, clause, or sentence is rendered meaningless or superfluous." *In re Karavidas*, 2013 IL 115767, ¶ 109 (Thomas J., dissenting, joined by Karmeier, J.).

¶ 31 The Charter Schools Law expressly adopts the Administrative Review Law to review a decision by the Commission in two instances: (1) section 27A-8(h) confers authority on the Commission to reverse a local school board's decision to deny an initial charter school proposal, and (2) section 27A-9(e) confers authority on the Commission to reverse a local

school board's decision to deny, revoke, or not renew a charter school's charter. Section 27A-8(h) reads, in its entirety, as follows:

"The Commission may reverse a local school board's decision to deny a charter school proposal if the Commission finds that the proposal (i) is in compliance with this Article and (ii) is in the best interests of the students the charter school is designed to serve. Final decisions of the Commission are subject to judicial review under the Administrative Review Law." 105 ILCS 5/27A-8(h) (West 2012).

¶ 32    Section 27A-9(e) reads, in its entirety, as follows:

"Notice of a local school board's decision to deny, revoke or not to renew a charter shall be provided to the Commission and the State Board. The Commission may reverse a local board's decision if the Commission finds that the charter school or charter school proposal (i) is in compliance with this Article, and (ii) is in the best interests of the students it is designed to serve. The Commission may condition the granting of an appeal on the acceptance by the charter school of funding in an amount less than that requested in the proposal submitted to the local school board. Final decisions of the Commission shall be subject to judicial review under the Administrative Review Law." 105 ILCS 5/27A-9(e) (West 2012).

¶ 33    Woodland relies on these two provisions to argue that the Administrative Review Law applies to decisions by the Commission to renew a charter where the Commission, not the local school board, is the authorizer. The question is whether the Charter Schools Law adopts the Administrative Review Law as to the decisions allowed under sections 27A-8(h) and 27A-9(e) only, or as to the decision to renew a charter as the school's authorizer. In support of finding the latter, Woodland argues the Administrative Review Law applies to all decisions of the Commission because the language in sections 27A-8(h) and 27A-9(e) is an "unequivocal pronouncement by the legislature, made twice no less, [that] removes any doubt as to whether the [Administrative Review Law] applies to any final decision made by the Commission."

¶ 34    Woodland's first argument in support of the applicability of the Administrative Review Law is directly contrary to the well-settled rule of statutory construction that statutes must be read so as not to render any clause superfluous. When construing a statute, we read the statute as a whole considering all its relevant parts, and avoid an interpretation "which would render any portion of the statute meaningless or void." *Sylvester*, 197 Ill. 2d at 232. Here, Woodland's argument is that two sections of the Charter Schools Law subject all final decisions of the Commission to the Administrative Review Law. If Woodland is correct then one of those sections is necessarily superfluous. This court cannot adopt such a construction of the Charter Schools Law.

¶ 35    Woodland argues that section 27A-8 applies to the evaluation of charter school proposals and "such evaluations are not limited to a charter applicant's initial proposal," therefore, the language in section 27A-8(h) applies to the decision at issue in this case. Woodland also argues that the language in section 27A-9(e) adopting the Administrative Review Law applies to decisions by the Commission regarding a denial of a charter and that language applies to the Commission's decision at issue here because each renewal by the Commission of Prairie Crossing's charter "is a continuing reversal of Woodland's decision to deny Prairie Crossing's charter." (Emphasis omitted.) Both arguments fail because the Charter Schools Law treats initial approval of a charter differently than renewal of a charter, and there is no language in the Charter Schools Law to demonstrate the legislature's intent that the adoption of the

Administrative Review Law for some Commission decisions was intended to apply to the decision at issue in this case.

¶ 36    There is overlap between the initial charter school proposal and the decision to renew a school's charter. Particularly, the renewal application must contain a "report on the progress of the charter school in achieving the goals, objectives, pupil performance standards, content standards, and other terms of the initial approved charter proposal." 105 ILCS 5/27A-9(b) (West 2012). However, the fact that the renewal process considers terms of the initial approved charter is not enough to expand the scope of the adoption of the Administrative Review Law for final decisions by the Commission approving initial charter applications to decisions to renew charter applications. The overlap lies in the substantive considerations in granting an initial charter rather than in the procedural mechanism for making a decision to renew a charter based in part on those substantive criteria.

¶ 37    The procedure for the renewal process is contained in a separate section of the Charter Schools Law and there are separate and distinct provisions in the statute addressing the decision to renew a charter. See, *e.g.*, 105 ILCS 5/27A-9(c) (West 2012) ("A charter may be revoked or not renewed if the local school board or the Commission, as the chartering entity, clearly demonstrates that the charter school did any of the following, or otherwise failed to comply with the requirements of this law ***."); 105 ILCS 5/27A-9(e) (West 2012) ("The Commission may condition the granting of an appeal on the acceptance by the charter school of funding in an amount less than that requested in the proposal submitted to the local school board."). The language and structure of the Charter Schools Law demonstrate that procedurally the legislature intended to treat the decision to grant an initial charter and the decision to renew a charter differently. This is also why we cannot find that a renewal of a charter is procedurally the same as a reversal of a local school board's decision to deny an initial charter proposal.

¶ 38    If that were not enough, the plain language of the sections of the Charter Schools Law at issue belies Woodland's argument. "In determining the meaning of a statute, a court will not read language in isolation, but must consider it in the context of the entire statute." *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14. Woodland would have this court read "Final decisions of the Commission shall be subject to judicial review under the Administrative Review Law" in isolation from the remainder of the section in which it is found. That we cannot do. "It is well settled that a court may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express." *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 16. "There is no rule of statutory construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute says." *Ultsch*, 226 Ill. 2d at 184. Section 27A-8(h) authorizes the Commission to reverse a local school board decision not to grant an initial charter proposal—a procedure that is not repeated each time the charter is renewed—and section 27A-9(e) addresses a final decision by the Commission to reverse a local school board's decision to deny, revoke, or not to renew. Nothing in the language of either section addresses a decision by the Commission to renew a charter as the school's authorizer nor broadens the scope of the Administrative Review Law language to the entire Charter Schools Law. Therefore, Woodland's arguments that the language in sections 27A-8(h) and 27A-9(e) adopting the Administrative Review Law applies to the decision to renew Prairie Crossing's

charter fail. We hold the trial court lacked jurisdiction to proceed with a review of the Commission's decision under the Administrative Review Law.

¶ 39    Woodland argues that judicial review is nonetheless appropriate pursuant to the common law writ of *certiorari* which is used to obtain circuit court review of an administrative decision when the administrative agency's enabling statute does not expressly adopt the Administrative Review Law. *Porter*, 2014 IL App (1st) 122891, ¶ 23. Where the enabling statute does not adopt the Administrative Review Law and provides no other method for reviewing the agency's decisions, "the writ of common law *certiorari* survives as an available method of review. [Citation.]" (Internal quotation marks omitted.) *Outcom, Inc.*, 233 Ill. 2d at 333. However, the right to review administrative decisions, including review by writ of *certiorari*, is limited to those who were parties of record to the agency proceeding and also aggrieved by the agency's decision. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 682 (2010).

¶ 40    We have no need to address Woodland's argument it is aggrieved by the Commission's decision because Woodland was not a party of record to the agency's proceedings. Woodland admitted that it was not a party of record in the proceedings and argued that it should have been made a party. The doctrines of invited error, waiver, and judicial estoppel prevent a party from taking one position at trial and a different position on appeal. *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 800 (2009). Nonetheless, Woodland argues the legislature did not intend for the local school board to lose standing "once a charter school applicant appeals [a local school board's] denial of a charter proposal." Woodland renews its previous argument that each renewal is an appeal of the local school board's decision to deny the initial charter proposal and therefore it is a party to the renewal process. Woodland argues "the distinction between renewal and revocation in Section 27A-9 of the Charter Schools Law suggests that at the conclusion of each five-year term, the Legislature intended that the charter proposal that had been previously denied by the local school board be considered as a fresh appeal with an opportunity for the school district to participate."

¶ 41    We have already rejected Woodland's argument that renewal of a charter is procedurally the same as a reversal of a local school board's decision to deny an initial charter proposal. Even if Woodland was a perpetual party to a continuous procedure to repeatedly reverse a local school board's decision not to approve an initial charter proposal—which it is not because the Charter Schools Law is clearly not structured in that way—Woodland does not dispute that it was not a party to Prairie Crossing's appeal to the Board when Woodland denied the initial proposal. Woodland does not suggest why it could be made a party of record now when it did not make itself a party of record then.

¶ 42    The fact that the Commission is required to consider whether the charter school continues to be economically sound for both the charter school and the local school district (105 ILCS 5/27A-7(a)(9) (West 2012)) does not make the local school district a party of record; nor does the fact the Commission listened to and considered Woodland's concerns. As Woodland's counsel conceded, Woodland participated in public meetings where the Commission accepted public comment. Every member of the public who commented is not now a party of record in these proceedings, and the Charter Schools Law, as currently written, does not confer party status on the local school board in the renewal process when the Commission is the school's authorizer. See *Kemp-Golden v. Department of Children & Family Services*, 281 Ill. App. 3d 869, 876 (1996) (rejecting argument plaintiff had standing to seek administrative review where

there was "no statutory authority for affording plaintiff party status based on her participation at the administrative hearing"). We hold Woodland lacks standing to seek review of the Commission's decision to renew Prairie Crossing's charter.

¶ 43    Similarly, Woodland lacks standing to seek *mandamus* or a declaratory judgment concerning the Commission's decision. "A *mandamus* action is not an appropriate means for seeking judicial review of an administrative proceeding." *Newsome v. Illinois Prison Review Board*, 333 Ill. App. 3d 917, 920 (2002). Further, "*[m]andamus* is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public officer where no exercise of discretion on his part is involved. [Citation.]" (Internal quotation marks omitted.) *Jamison v. City of Zion*, 359 Ill. App. 3d 268, 269-70 (2005).

> "Our supreme court has repeatedly cautioned that *[m]andamus* is an extraordinary remedy, which may be used to enforce the performance of official duties by a public officer, only where the petitioner is entitled to the performance as a matter of right, and only where no exercise of discretion on the part of the officer is involved. [Citations.] *Mandamus* cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised. [Citation.]" (Internal quotation marks omitted.) *Mabwa v. Mendoza*, 2014 IL App (1st) 142771, ¶ 36.

¶ 44    The decision to renew a charter school's charter requires the Commission to exercise its discretion. Therefore, the complaint for *mandamus* should be dismissed. *Newsome*, 333 Ill. App. 3d at 921. Moreover, "a writ of *certiorari*, rather than a declaratory judgment action, is the proper means to challenge an administrative decision to which the Administrative Review Law does not apply. [Citations.] Regardless, the court's authority to review an agency's decision would be the same whether the review were through a declaratory judgment or a writ of *certiorari* [citation], and we have determined that [Woodland does] not have standing to seek such review." *Helping Others Maintain Environmental Standards*, 406 Ill. App. 3d at 683-84.

¶ 45    The trial court's obvious concern that a local school district is left without an opportunity to directly challenge the continued renewal of a charter school it once rejected was well-founded. This case involved serious and pertinent allegations on a highly contentious subject, making those concerns all the more significant. Constrained as we are by the rules of statutory construction and the intent of the legislature as expressed in the plain language of the statutes it writes, we must hold that the Charter Schools Law, as written, contains no provision for local school boards to seek judicial review of Commission decisions to renew a charter as the school's authorizer. We disagree with Woodland, however, that it is without any recourse whatsoever.

¶ 46    As noted by the State defendants, the Board is authorized "to remove the power to authorize from any authorizer in this State if the authorizer does not demonstrate a commitment to high-quality authorization practices and, if necessary, revoke the chronically low-performing charters authorized by the authorizer at the time of the removal." 105 ILCS 5/27A-12 (West 2012). Pursuant to rules adopted to carry out that power, the Board *must* consider a complaint "alleging that an authorizer has violated a requirement of [the Charter Schools Law]" unless, *inter alia*, the "State Superintendent of Education has *documentation* that the authorizer already is *satisfactorily* addressing issues that are substantially the same as

those raised in the complaint." (Emphases added.) 23 Ill. Adm. Code 650.65 (2014). The regulations do not limit who may file a written complaint with the Board.

"At the conclusion of any complaint investigation, the State Board shall provide to the complainant a written decision that addresses each allegation in the complaint and contains:

A) Findings of fact and conclusions with respect to those allegations;

B) The reasons for the State Board of Education's final decision; and

C) Orders for any actions or sanctions, including, without limitation, technical assistance activities and negotiation, imposed against the authorizer and/or any charter schools under its jurisdiction." 23 Ill. Adm. Code 650.65(b)(3) (2014).

Woodland is not left without any means of asserting the Commission is not fulfilling its statutory duties as Prairie Crossing Charter School's authorizer other than by judicial review of the Commission's decision to renew its charter.

¶ 47    Woodland lacked standing to seek judicial review of the Commission's decision to renew Prairie Crossing's charter or to seek a declaratory judgment or writ of *mandamus* concerning that decision. Defendants' motion to dismiss should have been granted. The trial court judgment, which reversed the Commission's decision, is hereby vacated and Woodland's complaint is dismissed in its entirety with prejudice.

¶ 48                                    CONCLUSION

¶ 49    For the foregoing reasons, the judgment of the circuit court of Cook County is vacated and the case is dismissed.

¶ 50    Judgment vacated and case dismissed.