2023 IL App (1st) 221723-U

No. 1-22-1723

Order filed November 22, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BOARD OF EDUCATION OF WOODLAND COMMUNITY CONSOLIDATED SCHOOL DISTRICT 50, | ) ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 5892 |
| | ) | |
| ILLINOIS STATE BOARD OF EDUCATION and its Superintendent, DR. CARMEN AYALA, and BOARD OF DIRECTORS OF PRAIRIE CROSSING CHARTER SCHOOL, | ) ) ) ) | Honorable Thaddeus Wilson, Judge presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell concurred in the judgment.
Justice Mikva specially concurred.

**ORDER**

*Held*: The circuit court's denial of Woodland's complaint for a common law writ of *certiorari* was proper where there was no justiciable issue due to the abolishment of the Illinois State Charter School Commission. Affirmed.

¶ 1    Plaintiff, Board of Education of Woodland Community Consolidated School District 50 (Woodland), submitted an administrative complaint to the Illinois State Board of Education (ISBE), requesting the removal of the chartering authority of the Illinois State Charter Commission (Commission) and closure of Prairie Crossing Charter School (Prairie Crossing). The ISBE found that Woodland's complaint was moot due to the abolishment of the Commission in July 2020, and that the 2019 renewal of Prairie Crossing was lawful. Woodland filed a complaint for a common law writ of *certiorari*, which was denied by the circuit court for lack of a justiciable issue. Woodland now appeals.

¶ 2                                    I. BACKGROUND

¶ 3    Woodland enrolls approximately 5400 students from kindergarten through eighth grade. Woodland's students come from various communities within Lake County, Illinois. Prairie Crossing is a charter school organized under Article 27A of the Illinois School Code (105 ILCS 5/27A-1 *et seq.* (West 2022) (Charter Schools Law). It enrolls approximately 444 students from kindergarten through eighth grade.

¶ 4    In 2011, the Commission was created. It was a nine-member public board responsible for "authorizing high quality charter schools throughout this State, particularly schools designed to expand opportunities for at risk students." 105 ILCS 5/27A-7.5(a)-(9) (West 2012). The effect was that, beginning in 2011, if a local school board denied a charter school proposal, then the applicant could file an appeal with the Commission. 105 ILCS 5/27A-8(g) (West 2012). If the Commission reversed the local school board's denial and the ISBE certified the proposed contract between the Commission and either the applicant or the charter school, then the Commission became the authorizer of the charter school. 105 ILCS 5/27A-9(f) (West 2012). The ISBE could "remove the power to authorize from any authorizer in [Illinois] *** not demonstrate[ing] a commitment to

high-quality authorization practices," as well as "if necessary, revoke the chronically low-performing charters authorized by the authorizer by the time of the removal." 105 ILCS 5/27A-12 (West 2012).

¶ 5    Upon the establishment of the Commission in 2011, all charter school authorizing powers and duties held by the ISBE were transferred to the Commission, including that of Prairie Crossing.

¶ 6    In 2014, the Commission renewed Prairie Crossing's charter for five additional years. Woodland filed a complaint against Prairie Crossing, the Commission, and the ISBE in the circuit court, seeking reversal of the Commission's decision to renew Prairie Crossing's charter. In March 2015, the circuit court reversed the Commission's decision to renew Prairie Crossing's charter. On direct appeal, this court reversed the circuit court's ruling, finding that Woodland did not have standing to challenge the Commission's charter renewal in the circuit court, as it was not a party to the underlying proceedings. *Board of Education of Woodland Community School District 50 v. Illinois State Charter School Commission*, 2016 IL App (1st) 151372, ¶ 40. We noted that Woodland was not without recourse, as it could bring a complaint, via section 650.65 of Title 23 of the Illinois Administrative Code (23 Ill. Adm. Code 650.65 (2014),  to the State Superintendent alleging that the Commission, as authorizer, violated a requirement of either the Charter Schools Law (105 ILCS 5/27A-1 *et seq*. (West 2014)) or the Illinois Administrative Code (23 Ill. Adm. Code 650.65 (2014)). *Id*. ¶ 46.

¶ 7    In 2019, the Commission renewed Prairie Crossing's charter through 2024. On May 7, 2019, Woodland submitted an administrative complaint to Dr. Carmen Ayala, the State Superintendent of ISBE, and ISBE, pursuant to section 650.65 of Title 23 of the Illinois Administrative Code. *Id*. Therin, Woodland alleged that the Commission failed to extensively evaluate Prairie Crossing's performance as part of its accountability and renewal review process,

was unwilling to provide appropriate oversight of Prairie Crossing to ensure real change, neglected its obligations to ensure that Prairie Crossing put a special emphasis on enrolling at-risk students, assessed Woodland's finances in a "transparently narrow vacuum," and did not have a transparent renewal process. Woodland asked that the ISBE decline to certify the pending 2019 charter renewal agreement between the Commission and Prairie Crossing, terminate all existing charter agreements between the Commission and Prairie Crossing, and close Prairie Crossing.

¶ 8     During the ISBE's adjudication of Woodland's administrative complaint, the Illinois legislature eliminated the Commission, effective July 1, 2020. Pub. Act 101-0543 (eff. Jul. 1, 2020) (amending 105 ILCS 27A-5). The Commission's authorizing powers and duties regarding charter schools were transferred to the ISBE. *Id.* Accordingly, in its final decision, the State Superintendent noted that ISBE had "concluded its complaint investigation process and determined that there is no need to further extend any reasonable inquiry under Section 650.65(d) regarding whether the Commission has violated any provisions of Article 27A of the School Code." She went on to say that the complaint was "largely rendered moot by Public Act 101-0543, which abolished the Commission effective July 1, 2020."

¶ 9     Woodland filed a complaint for a common law writ of *certiorari* in the circuit court against the ISBE, the Superintendent of ISBE, and the Board of Directors of Prairie Crossing. The circuit court found that neither section 650.50 of Title 23 of the Illinois Administrative Code, nor section 27A-12 of the Charter Schools Law permitted the ISBE to close a charter school without first removing the authorizer's authorizing powers. The court noted that because the Commission, as the authorizer of Prairie Crossing, was abolished during the litigation of the underlying complaint, the underlying complaint for administrative review was rendered moot. Accordingly, the court found that Woodland failed to present a justiciable issue, and thus the court lacked subject-matter

jurisdiction over the dispute. The common law writ of *certiorari* was denied. Woodland now appeals.

¶ 10                                                    II. ANALYSIS

¶ 11    On appeal, Woodland contends that the circuit court erred in denying the complaint for failing to present a justiciable issue. Woodland argues that the underlying complaint was not moot, and that even if it was, the public interest exception to the mootness doctrine applies. The ISBE and Prairie Crossing maintain that the circuit court properly denied the complaint, and that the public interest exception to the mootness doctrine does not apply.

¶ 12    A common law writ of *certiorari* is a general method for obtaining circuit court review of administrative actions when the administrative agency's enabling statute does not expressly adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.*) (West 2020)) and provides for no other form of review. *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). As the Charter Schools Law does not adopt the Administrative Review Law, those decisions may be reviewed pursuant to a common law writ of *certiorari*. *Id.*

¶ 13    However, there is no absolute right to review by *certiorari*. *Tanner v. Court of Claims*, 256 Ill. App. 3d 1089, 1092 (1994). A writ is properly denied if, as a matter of law, the court is able to determine that the plaintiff cannot prevail, or he is not entitled to the review he seeks. *Id.* Here, the circuit court denied the writ for *certiorari* based on Woodland's failure to present a justiciable issue because the underlying administrative complaint was moot.

¶ 14    The existence of a justiciable matter is a prerequisite to the circuit court's subject-matter jurisdiction, and absent a justiciable matter, the circuit court has no authority to proceed. *Waterhouse v. Robinson*, 2017 IL App (4th) 160433, ¶ 12. Justiciability encompasses a range of concepts such as "advisory opinions, feigned and collusive cases, standing, ripeness, mootness,

political questions, and administrative questions." *Ferguson v. Patton*, 2013 IL 112488, ¶ 23. The issue of justiciability presents a question of law, and we review the issue *de novo*. *Id*. ¶ 22.

¶ 15                                  A. Mootness

¶ 16     Here, the circuit court found that there was not a justiciable matter, and therefore it did not have subject-matter jurisdiction, because the underlying complaint was moot. "As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Barbara H*., 183 Ill. 2d 482, 491 (1998). "A moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party; an abstract question is one in existence but for which no effectual relief can be granted." *Ahmad v. Board of Election Commissioners*, 2016 IL App (1st) 162811, ¶ 9. "This court will not review cases merely to establish a precedent or guide future litigation." *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235 (1982).

¶ 17     Resolving the issue of whether the underlying complaint was rendered moot by Public Act 101-0543, which abolished the Commission, requires us to interpret the provisions of section 27A-12 of the Charter Schools Law and section 650.65 of Title 23 of the Illinois Administrative Code. When construing a statute, the primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. In interpreting a statute, no part should be rendered meaningless or superfluous. *Id*. Courts may not depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express. *In re N.C.*, 2014 IL 116532, ¶ 50.

¶ 18    Provision 27A-12 of the Charter Schools Law provides that the ISBE has the authority remove the power to authorize from any authorizer in the State if the authorizer does not demonstrate a commitment to high-quality authorization practices and, if necessary, revoke the chronically low-performing charters authorized by the authorizer at the time of the removal. 105 ILCS 5/27A-12 (West 2020). It further provides that the ISBE shall adopt rules to carry out this power, "including provisions to determine the status of schools authorized by an authorizer whose authorizing power is revoked." *Id.*

¶ 19    Pursuant to this authority, the ISBE adopted section 650.65 of Title 23 of the Illinois Administrative Code. 23 Ill. Admin. Code § 650.65 (2020). This section provides that a written complaint may be submitted to the Superintendent of the ISBE alleging that an authorizer has violated the Charter Schools Law or the ISBE regulations. 23 Ill. Admin. Code § 650.65(b) (2020). Section 650.65 outlines the steps the Superintendent must take after the complaint is submitted, such as: notifying the authorizer, giving the authorizer an opportunity to respond, conducting a reasonable inquiry to determine if the authorizer has violated any provisions of the Charter School Law or the ISBE regulations, and specifying any formal findings of noncompliance. 23 Ill. Admin. Code § 650.65(b)-(f) (2020). The reasonable inquiry "may be conducted by State Board of Education personnel, or an outside entity, at the State Superintendent's discretion." 23 Ill. Admin. Code § 650.65(d)(2) (2020).

¶ 20    If the State Superintendent determines, after reasonable inquiry, that the authorizer was not compliant, it "shall provide a written notification of noncompliance to the authorizer" specifying in part "the consequences that may be imposed by the State Board of Education should the authorizer fail to address the areas of noncompliance (see subsection (i)). 23 Ill. Admin. Code § 650.65(e)(4) (2020). Section 650.65(i) states that, in accordance with section 27A-12 of the

Charter Schools Law, the ISBE may remove an authorizer's power to authorize charter schools as a sanction. 23 Ill. Admin. Code § 650.65(i) (2020). If the chartering authorization is removed, the ISBE "shall determine the status of each charter school within the authorizer's portfolio" and can allow the charter school to continue operating under the jurisdiction of the authorizer, terminate the charter agreement and transfer the charter school to the ISBE, or terminate the charter agreement and close the school. *Id*.

¶ 21    Woodland concedes that the Commission, as the authorizer, has been abolished, and therefore its request to remove the Commission as the authorizer is a moot issue, but maintains that the ISBE could still revoke Prairie Crossing's charter and close the school. However, the charter agreement that Woodland sought to revoke was between the Commission and Prairie Crossing. The charter agreement between the Commission and Prairie Crossing was effectively revoked when the Commission was abolished.

¶ 22    As just outlined above, section 650.65, the section pursuant to which the underlying complaint in this case was filed, provides a process for filing a complaint against an authorizer, not a charter school. It provides for the filing of a complaint "alleging that an authorizer" has violated the statute or regulations. 23 Ill. Admin. Code § 650.65(b) (2020). Moreover, the plain language of section 650.65 only authorizes the revocation of a charter agreement if the authorizer's powers have been removed for failing to comply with its responsibilities as an authorizer. *Id*. Specifically, section 650.65 states in pertinent part:

> "In accordance with Section 27A-12 of the [Charter Schools Law], the [ISBE] shall
> *** determine whether to remove the power to authorize from any authorizer in
> [Illinois] *** and, if necessary, revoke the charters of the chronically low

performing charters authorized by the authorizer at the time the power to authorize

is removed." 23 Ill. Admin. Code § 650.65 (2020).

¶ 23    We find that based on a plain reading of section 650.65, the legislature did not intend to revoke a school's charter and close the school without first removing the authorizer's authorizing powers. If a chartering agreement could be revoked without first removing the authorizer, it would render superfluous the statement above giving ISBE power to remove the authorizer and revoke the chronically low-performing charters "authorized by the authorizer at the time of the removal." *Id.* Accordingly, we find that Woodland's underlying complaint, requesting the removal of the Commission's authorizing powers and the revocation of the Commission's chartering agreement with Prairie Crossing, is rendered moot by the abolishment of the Commission. See *Ahmad*, 2016 IL App (1st) 162811, ¶ 9 (a moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents a controversy over the interests of the party). It follows that the circuit court properly denied Woodland's complaint for a writ of *certiorari* for failing to state a justiciable matter.

¶ 24    We acknowledge that Woodland took the steps we outlined in its previous appeal – by bringing a complaint to the State Superintendent against the Commission pursuant to section 650.65 of Title 23 of the Illinois Administrative Code. *Woodland Community School District 50*, 2016 IL App (1st) 151372, ¶ 46. However, we could not have anticipated that the Commission would be abolished during the pendency of that litigation. While we sympathize with Woodland's position, we cannot, as a matter of law, reach the merits of a case for which we lack subject-matter jurisdiction. See *People v. Bailey*, 2014 IL 11549, ¶ 29 (while appellate courts have jurisdiction to hear appeals from judgments entered by trial courts lacking jurisdiction, appellate courts are limited in those instances to the issue of jurisdiction and have "no authority to address the

substantive merits of [the] judgment."). Now that ISBE is the authorizer, and the chartering agreement is between ISBE and Prairie Crossing, Woodland can file a complaint with the State Superintendent pursuant to section 650.65 of Title 23 of the Illinois Administrative Code against ISBE, just as it did against the Commission.

¶ 25                                B. Public Interest Exception

¶ 26    Having found that the underlying complaint was moot, we now consider whether the public interest exception to the mootness doctrine applies. The public interest exception to the mootness doctrine permits review of an otherwise moot question when the magnitude or immediacy of the interests involved warrants action by the court. *Commonwealth Edison Co. v. Ill. Commerce Comm'n*, 2016 IL 118129, ¶ 12. "The public interest exception allows a court to consider an otherwise moot case when: (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d at 355. "The exception is narrowly construed and requires a clear showing of each criterion." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005). "If any one of the criteria is not established, the exception may not be invoked." *Commonwealth Edison Co. v. Ill. Commerce Comm'n*, 2016 IL 118129, ¶ 13. The public interest exception is invoked only on "rare occasions" when there is an extraordinary degree of public interest and concern. *Id.*

¶ 27    We first turn to the second criterion and find that Woodland has not shown that the issue raised in its underlying complaint needed an authoritative determination for future guidance. In deciding the need for an authoritative determination, courts look to whether the law is in disarray or conflicting precedent exists. *Commonwealth Edison Co. v. Ill. Commerce Comm'n*, 2016 IL 118129, ¶ 16. Here, Woodland has not identified any conflicting precedent with the decision of

the ISBE. While the issue of whether the ISBE may take action against a charter school authorized by the Commission without first removing its authorizing powers may resolve a question of statutory interpretation, it is highly unlikely that the ISBE will again be tasked with deciding whether it has the power to revoke a charter authorized by the Commission, after the Commission was abolished.

¶ 28 Having found that Woodland's underlying complaint fails to meet at least one of the criteria for the public interest exception of the mootness doctrine to apply, we find that this exception to the mootness doctrine does not apply. *Id.* Accordingly, we find that the circuit court properly denied Woodland's complaint for a writ of *certiorari* due to Woodland's failure to present a justiciable issue.

¶ 29                                                       III. CONCLUSION

¶ 30 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 31 Affirmed.

¶ 32 JUSTICE MIKVA, specially concurring:

¶ 33 I concur with all aspects of this decision, except for the suggestion made in paragraph 24 that Woodland still has an avenue for judicial review of the renewal of Prairie Crossing's charter. The reality, in my view, is that the legislature granted Woodland and other school districts a very narrow route for judicial review of charters by creating the Commission and allowing parties to file an administrative proceeding seeking to revoke the powers of the Commission and revoke charters authorized by the Commission as part of that revocation of the Commission's powers. Those orders would be subject to review, as this one was, pursuant to a common law writ of *certiorari.* Because the Commission was abolished in 2020, I agree with the majority that this narrow route of review is gone and there is no justiciable issue left for this court to consider.

11

¶ 34    However, now that the Commission is gone, there is truly no avenue for Woodland to take to obtain judicial review of this decision. Since the ISBE has now taken over the Commission's authorizing powers and duties, a complaint, like the one that Woodland filed here, under section 27A-12 of the School Code and section 650.65 of the Administrative Code, would be a complaint before the ISBE, asking the ISBE to subject itself to corrective action, including potentially removing its own power to authorize charter schools. Only if the ISBE did remove itself as an authorizer could it then terminate an existing charter agreement. See 23 Ill. Adm. Code 650.65(i)(2)(B) (2020). This simply does not seem like a realistic remedy for Woodland or any other school board to use to object to a charter school.

¶ 35    In 2016 we held in *Board of Education of Woodland Community School District 50 v. Illinois State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 42, that because Woodland was not a party to the administrative proceeding in which Prairie Crossing's charter was renewed, it had no standing to seek judicial review of the renewal decision. We noted there that the legislature gave Woodland the ability, under the School Code (105 ILCS 5/27A-1 *et seq*. (West 2022)) and the Administrative Code (23 Ill. Adm. Code 650.65 (2014)), to challenge the Commission as authorizer and thereby have a court order the revocation of Prairie Crossing's charter as part of that challenge. That is the route that was available to Woodland, which Woodland took, and that is the route that we now hold is foreclosed. I would prefer us to openly acknowledge both that the decision to eliminate the Commission has also eliminated the remedy that we suggested Woodland use in our 2016 opinion and that now there is no mechanism for the review of charters that were authorized by the Commission. Except for this, I join in the majority's well-reasoned decision.

¶ 36    I note, however, that as I read the statute, Woodland will re-acquire the remedy that it lacked when we issued our 2016 decision. The 2020 amendment provided that: "At the end of its charter term, a charter school may reapply to the board or boards for authorization." 105 ILCS 5/27A-7.5. This is apparently a reference to the local school boards, since the statute refers to the "State Board" when it is discussing the ISBE. Now that the Commission is gone, applications for renewal must be made in the first instance to the local school boards. If Prairie Crossing reapplies for a charter and Woodland decides not to renew it, and if Prairie Crossing then appeals and the ISBE reverses, Woodland would be a party to that administrative action and would have standing to appeal any administrative decision. As Shakespeare might say: "All's Well That Ends Well."